**SO ORDERED.**

**SIGNED this 15 day of June, 2007.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| DAVID PAUL ZEITCHIK | 05-09769-8-RDD |
| DEBTOR | |
| ESTHER P. ZEITCHIK | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | 06-00169-8-RDD-AP |
| DAVID PAUL ZEITCHIK | |
| Defendant | |

**MEMORANDUM OPINION**

The trial of this adversary proceeding filed by the plaintiff, Esther P. Zeitchik, pursuant to 11 U.S.C. § 523(a)(5) and (15) to determine the dischargeability of debts owed to Ms. Zeitchik by the defendant,

David Paul Zeitchik, was held on June 8, 2007 in Wilson, North Carolina.[1] David Paul Zeitchik filed a petition for relief pursuant to chapter 7 of the Bankruptcy Code on October 14, 2005.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. Venue is proper pursuant to 28 U.S.C. § 1409(a). This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

David Paul Zeitchik and Esther P. Zeitchik were married on February 10, 1973 in Silver Springs, Maryland. They have two adult children. The parties separated on August 31, 1996 and were divorced on August 7, 2000. Pursuant to an oral agreement, transcribed and incorporated into the judgment of absolute divorce, Mr. Zeitchik was to make three separate payments to Ms. Zeitchik. Plaintiff's Exhibit 1. The first payment was the sum of $2,300.00 per month as indefinite alimony.[2] The second payment was $145,000.00, to be paid with no interest in installments of $805.56 per month for 15 years. The third payment was for the first mortgage on the marital residence, which was transferred to the wife. Ms.

---

[1] This bankruptcy case was filed on October 14, 2005, which was prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Therefore, the pre-BAPCPA version of 11 U.S.C. § 523 is applicable to this case.

[2] A hearing was held on the plaintiff's motion for summary judgment on March 15, 2007, at which time the defendant stipulated that this amount was nondischargeable as alimony pursuant to 11 U.S.C. § 523(a)(5). On March 19, 2007, an order regarding the plaintiff's motion for summary judgment was entered granting summary judgment to the plaintiff with regard to the nondischargeability of the alimony and establishing the sums due with regard to the two remaining obligations. Partial summary judgment was entered finding that Mr. Zeitchik owed $99,888.64 as of March 15, 2007 on the $145,000.00 obligation and $42,235.68 as of January 7, 2007 on the mortgage obligation, with that amount continuing to increase at a rate of $1,884.42 per month.

2

Zeitchik seeks a determination that the second and third payments are in the form of alimony, support, or maintenance and are therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(5). In the alternative, Ms. Zeitchik seeks a determination that, if the second and third payments are determined to be property settlement, said obligations are nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

### I. CLASSIFICATION

The court must first determine whether the payments at issue are in the form of alimony or support or are in the form of a property settlement. "The proper test of whether the payments are alimony lies in proof of whether it was the intention of the parties that the payments be for support rather than as a property settlement." Melichar v. Ost (In re Melichar), 661 F.2d 300, 303 (4th Cir. 1981) (citing Shacter v. Shacter, 467 F.Supp. 64 (D.Md.), aff'd without published opinion, 610 F.2d 813 (4th Cir. 1979); Nichols v. Hensler, 528 F.2d 304 (7th Cir. 1976); 3 Collier on Bankruptcy P 523.15, at 523-111 (1981 ed.)).

In this case, Ms. Zeitchik testified that, after their separation, Mr. Zeitchik paid her $5,400.00 per month to cover her expenses of approximately $5,000.00 per month. This continued, voluntarily, from August 1996 until sometime in 1998, when he decreased the amount to $3,900.00 per month. Mr. Zeitchik continued to voluntarily pay the $3,900.00 per month until early in 2000, when he stopped making payments. In August 2000, after entry of the judgment of divorce, Mr. Zeitchik began making the required alimony payments of $2,300.00 per month and continued to do so through December 2004. Ms. Zeitchik testified that her monthly expenses remained at approximately $5,000.00 per month until the time of the divorce and up to the present. Plaintiff's Exhibit 9. At the time of her divorce, her intent was to receive approximately $5,100.00 per month from Mr. Zeitchik in order to maintain her current standard of living.

She testified that the $2,300.00 per month in alimony, the payment of $805.56 per month toward the $145,000.00 obligation, and the payment of the mortgage in the amount of $1,884.42 per month, equaled approximately $5,000.00 per month. Therefore, Ms. Zeitchik intended for all three payments to be considered as support for her. Ms. Zeitchik testified she received more than $100,000.00 in funds from Mr. Zeitchik shortly after the separation. Mr. Zeitchik stated the amount transferred was $120,000.00.

Mr. Zeitchik testified that it was his intention that the second and third payments be made in satisfaction of Ms. Zeitchik's marital property interests in his business. Mr. Zeitchik, at the time of the divorce, owned a successful manufacturing business. At that time, he testified, the value of the business and the building in which it was housed had been appraised at $1,600,000.00. Mr. Zeitchik was a 50% owner of the business and the building, so his interest was valued at $800,000.00. Mr. Zeitchik further testified that the mortgage on the marital residence at that time was $255,000.00. Mr. Zeitchik agreed to pay the mortgage and pay Ms. Zeitchik an additional $145,000.00 over time in satisfaction of her one-half marital interest in the value of his business and building, which was equivalent to $400,000.00.

Because the parties' intents seem to differ, the court must look to other factors to determine whether the payments should be classified as alimony or as property settlement. In <u>Sawtelle v. Keech (In re Keech)</u>, Adv. Pro. No. L-03-00109-8-AP, slip op. at 6-7 (Bankr. E.D.N.C. January 7, 2004), Judge Leonard cites several factors to be considered when determining the classification of an obligation arising from a divorce:

> the nature of the obligation, whether there are dependent children, the relative earning power of the spouses and an indication that the obligation was an attempt to balance it, the adequacy of the dependent spouse's support without the assumption of the obligation, dependent spouse's receipt of inadequate assets in settlement, status of the obligation upon death or remarriage, timing of payments (lump sum or periodic), the payee (direct vs.

4

>indirect), waivers of maintenance, whether the obligation is modifiable, location of the paragraph containing the obligation within the agreement (whether or not it is located within the property distribution section), and the tax treatment of the obligation.

Id. (citing Wright v. Wright (In re Wright), 184 B.R. 318, 321 (Bankr. N. D. Ill. 1995)).

In considering these factors, and looking specifically at the transcript of the agreement between the parties, it appears to the court that these payments should be classified as property settlement. The agreement specifies that both these payments are "in partial satisfaction of . . . marital property interests." Although Ms. Zeitchik testified that she considered the payments to be support and that she had not heard the term "property interests" used until the recitation of the agreement in the Maryland court, Ms. Zeitchik testified at the divorce hearing that she had an opportunity to discuss the agreement with her attorney and considered it to be a fair resolution. Plaintiff's Exhibit 1. While the alimony payments of $2,300.00 per month were classified as modifiable in the judgment for divorce, there was no modification language pertaining to the $145,000.00 obligation or the mortgage payment obligation. In fact, Mr. Zeitchik remained responsible for paying the principal balance of the mortgage to Ms. Zeitchik, even if Ms. Zeitchik chose to sell the marital residence. He was also required to maintain life insurance sufficient to cover the obligation on the mortgage so that Ms. Zeitchik would still receive the funds should he die prior to fulfilling the obligation. Plaintiff's Exhibit 1. It is also relevant that these two obligations were treated separately from the alimony. In Tilley v. Jessee, 789 F.2d 1074 (4th Cir. 1986), the Fourth Circuit Court of Appeals held the structure of the document, by placing alimony and property settlement in different provisions of the document, was probative of intent. The Court said, "In this instance, the agreement did more than simply label payments as alimony or property settlement. It exhibited a structured drafting that purported to deal

5

with separate issues in totally distinct segments of the document." Id. at 1077-1078.  That is the case here where each of the three obligations were dealt with in separate paragraphs.

Ms. Zeitchik testified that Mr. Zeitchik made 2 mortgage payments during 2005, and Mr. Zeitchik testified that he made 5 mortgage payments during 2005.  Defendant's Exhibits 1 and 2.  Regardless of the number of payments made, Ms. Zeitchik's tax returns for 2005 indicate that she did not report these payments as taxable alimony.  Defendant's Exhibit 3.  Mr. Zeitchik further testified that he did not claim the mortgage payments as a deduction for alimony paid and had never claimed the payments on the $145,000.00 obligation or the mortgage payments as a deduction for alimony paid.  Defendant's Exhibit 4.  The Fourth Circuit Court of Appeals has applied quasi-estoppel to preclude a debtor, who has deducted payments as alimony on income tax returns, "from avoiding the corresponding obligations or effects of this classification under the Bankruptcy Code."  Robb-Fulton v. Robb (In re Robb), 23 F.3d 895, 899 (4th Cir. 1994).  A party who has failed to report payments pursuant to a divorce decree as alimony income on income tax returns should likewise be estopped from alleging that the payments are alimony for purposes of 11 U.S.C. § 523(a)(5).

Finally, the court found Mr. Zeitchik's explanation of the negotiation for the $145,000.00 obligation and the mortgage payments more plausible than Ms. Zeitchik's.  Ms. Zeitchik's interest in Mr. Zeitchik's business and building would have been valued at approximately $400,000.00 based upon the appraisal of $1,600,000.00.  The $255,000.00 principal balance on the mortgage plus the $145,000.00 obligation equal $400,000.00.

Ms. Zeitchik's explanation that the obligations met the $5,100.00 in support she needed each month was not as credible.  If $5,100.00 was Ms. Zeitchik's "bottom line," as she testified, Mr. Zeitchik

could have simply made a $5,100.00 per month alimony payment. There would have then been no need for him to agree to take out a life insurance policy for the balance of the mortgage as alimony terminates on death, and he could have deducted the full amount of alimony on his taxes. For all of the foregoing reasons, the court finds that the $145,000.00 obligation and the obligation to make the mortgage payments on the marital residence were settlements of marital property interests and not in the nature of alimony, support, or maintenance. The court must now determine the dischargeability of those obligations pursuant to 11 U.S.C. § 523(a)(15).

## II. DISCHARGEABILITY

The pre-BAPCPA § 523(a)(15) provides that a property settlement can be dischargeable if:

(a) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
(b) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

If Mr. Zeitchik has the ability to pay the debts after payment of reasonable expenses, then the debt is not dischargeable. However, if Mr. Zeitchik does not have the ability to pay the debts after payment of reasonable expenses, then the debts are only discharged if the benefit to Mr. Zeitchik outweighs the detrimental consequences to Ms. Zeitchik. The burden is placed on Mr. Zeitchik to prove either his inability to pay or the balancing of the equities in his favor in order for the debt to be dischargeable.

Mr. Zeitchik testified that he is 59 years old and has a Bachelor of Arts degree in interior design from the International Institute of Interior Design. He began his own business, originally known as Crown Restaurant and Store Equipment, and was a successful businessman during the 1990s. Mr. Zeitchik's

7

business originally manufactured office furniture, but eventually became a manufacturer of kitchen cabinets as a result of the economy and a loss of government contracts. His business was originally located in Maryland, but was relocated to Bladenboro, North Carolina in 2001. During the course of the business, Mr. Zeitchik took on a partner, Joe Flutka. In 2005, Mr. Zeitchik had to undergo quadruple bypass surgery and was unable to work for several weeks. He did not receive any payments from the business during that time, and testified that Mr. Flutka mismanaged the business during his surgery and recovery. Shortly thereafter, the business was in financial distress, and ultimately filed bankruptcy shortly after Mr. Zeitchik filed bankruptcy.

Mr. Zeitchik testified that when he and Ms. Zeitchik originally separated, he voluntarily made payments of $5,400.00 per month to her, which he could afford to pay at that time. In 1998, he decreased that amount because he was no longer able to afford $5,400.00 per month. In 2005, he stopped making payments to Ms. Zeitchik and on the mortgage because the money he did have was necessary for him to survive.

After the failure of Mr. Zeitchik's business, he became employed with Hardee's as a store manager in Roanoke, Virginia, after unsuccessfully searching for a production manager position in southeastern North Carolina. His salary with Hardee's was $23,500.00. He was employed with Hardee's from December 2005 until October 2006. In October 2006, he became employed with Sonic Drive-In as manager, earning approximately $25,000.00 per year. He remained employed with Sonic Drive-In until April 2007, when his position was terminated. He has since been applying and interviewing for other jobs, but has been unable to secure another position. In 2006, Mr. Zeitchik earned approximately $25,000.00. Defendant's Exhibits 5 and 6.

Mr. Zeitchik testified that he does have a degree in interior design, but the design field is now computerized, and he does not have the expertise necessary to become employed in that field. He also testified that he has applied for production positions, for which he is well-qualified, but has not received any responses. He feels his age (59 years) is a detriment to being employed.

Mr. Zeitchik testified that he owns a one-half interest in a limited liability company that owns the building in Bladenboro, North Carolina, which formerly housed his business. However, the debt on the building is more than what the building is worth. He testified that he does not own a car, has a small checking account, a timeshare, household goods, and an IRA of approximately $37,000.00 that he has used to live on since his unemployment. The debtor testified that his current monthly expenses are approximately $1,676.44 plus an additional $461.00 per month for health insurance under COBRA.

Based on the positions he has been able to obtain since the failure of his business and based on the positions for which he has interviewed since the loss of his job with Sonic Drive-In, Mr. Zeitchik anticipates that, when he is able to find employment, he will be able to earn between $25,000.00 and $27,000.00 per year. After paying his monthly living expenses and the $2,300.00 per month alimony to Ms. Zeitchik, which is nondischargeable, he will not have the ability to make any additional payments to or on behalf of Ms. Zeitchik. In fact, it is doubtful that Mr. Zeitchik will have sufficient income to pay the alimony of $2,300.00 per month.

Ms. Zeitchik testified that she is 58 years old. She has asthma and osteoporosis. She also has fluid accumulating around her heart, which has led her doctors to indicate their preference that she not work. She has taken some college courses, but stopped taking classes in order to work full-time to support Mr. Zeitchik while he pursued his degree. She stopped working prior to her daughter's birth in 1977 and

remained without a job outside the home until after the separation from her husband. She is currently employed with Montgomery County Public Schools in a part-time position as a clerk. She works 25 hours per week and earns approximately $17,000.00 per year or $1,145.86 per month. Plaintiff's Exhibit 9.

      Ms. Zeitchik testified that since her separation and divorce from Mr. Zeitchik, she has had to make several adjustments to her lifestyle, including giving up bowling with a group of friends with whom she had bowled for over 30 years, leaving her synagogue, and giving up entertainment such as movies and dining in restaurants. She testified that she currently makes approximately $1,145.86 per month from her job and has approximately $5,078.00 in expenses. Ms. Zeitchik indicated that she has had a negative cash flow since January 2005. Since that time, she has used her savings, which consisted of over $100,000.00 given to her at the time of separation by Mr. Zeitchik, money from her parents, and sold a small amount of stock for living expenses. She testified that her cash and savings is now reduced to $35,000.00 and is being depleted by approximately $4,000.00 per month. Plaintiff's Exhibit 9.

      Ms. Zeitchik testified that she still resides in the marital residence. That home is a 3,400 square foot home with 4 bedrooms, 3 full baths and 2 half baths. Ms. Zeitchik values the home at $750,000.00, with an outstanding mortgage of approximately $219,000.00. Although there is considerable equity of over one-half million dollars in the home, Ms. Zeitchik explained that the home was in need of numerous repairs and that it would cost her more to sell the home and move somewhere else than it would to stay in the home. She indicated that to sell her home would place a substantial burden on her.

      Mr. Zeitchik's future income stream is questionable. He is currently unemployed. He has an interior design degree, but does not have the computer experience necessary to secure a job in that field. He has extensive production experience, but has been unable to find work in that area. His last two jobs

have been management positions in the fast food service industry, for which he has earned between $23,000.00 and $25,000.00 per year.

Mr. Zeitchik reviewed his expenses during his testimony, and they all appeared to be reasonable. These expenses, taken together with the alimony of $2,300.00 per month for which Mr. Zeitchik has acknowledged responsibility, will more than likely exceed the income from any position that Mr. Zeitchik may find in the future.

After reviewing the testimony of Mr. Zeitchik and Ms. Zeitchik, the court finds that Mr. Zeitchik does not have the ability to pay the $145,000.00 obligation to Ms. Zeitchik and the mortgage payment obligation required by the divorce decree. Mr. Zeitchik made substantial alimony and property settlement payments to Ms. Zeitchik for a period of approximately eight years, until health and business problems left him no ability to do so.

Inability to pay, in itself, is sufficient to regard these property settlement obligations as dischargeable. However, the court has also considered the balancing of the equities between the parties.

> The balancing test, like the ability to pay test, requires that the court consider the relative circumstances of the parties at the time of the adversary proceeding. The courts have developed a number of factors that may be considered in evaluating the relative impact of the dischargeability determination on the parties:
> -- the payment terms and amount of debt;
>
> -- the current income of the debtor, the creditor and their respective spouses;
>
> -- the current assets of the debtor (whether exempt or not), the creditor and their respective spouses;
>
> -- the current liabilities (other than those discharged) of the debtor, the creditor and their respective spouses;

11

-- the health, job skills, training, age and education of the debtor, the creditor and their respective spouses;

-- the age, number and any special needs of the dependents of the debtor, the creditor and their respective spouses;

-- any changes in the financial condition of the debtor and the creditor which may have occurred since the entry of the divorce decree;

-- the amount of debt which has been or will be discharged in the debtor's bankruptcy case;

-- whether the creditor is eligible for bankruptcy relief; and

-- whether the parties have acted in good faith in the filing of the bankruptcy case and in the litigation of the subsection 523(a)(15) issues.

4 Collier on Bankruptcy, ¶ 523.21[4] (15th ed. rev. 2005) (footnote omitted).

At the current time, Mr. Zeitchik is unemployed, having been terminated from his position on April 16, 2007. Mr. Zeitchik's financial condition has deteriorated dramatically since the entry of the divorce judgment and agreement. Mr. Zeitchik has very few assets, the most substantial being his $37,000.00 IRA.

Ms. Zeitchik is currently employed in a part-time position, and has a home with equity of more than $500,000.00. Her financial statement, which she prepared and submitted as evidence, indicates that, as of May 2, 2007, she had assets of $30,000.00 in cash on hand and in banks; $5,000.00 in savings accounts; $135,000.00 in an IRA or other retirement account; $750,000.00 in real estate; and $6,400.00 in the present value of an automobile. She also had liabilities of $9,000.00 to Star of David to be paid in monthly payments of $190.00 and a mortgage liability of $219,000.00. Ms. Zeitchik's net worth according to this financial statement is $698,400.00. Plaintiff's Exhibit 8.

Although the court does understand Ms. Zeitchik's desire to keep her home and the burden she is under to maintain her current standard of living on the salary received from her part-time position, the court feels that the totality of the circumstances weigh in favor of Mr. Zeitchik.  Ms. Zeitchik could sell her home, pay the mortgage, and use some portion of the $500,000.00 equity to buy a smaller home, townhouse, or condominium and have no mortgage payment.  Plus, depending on the price of the new home, she could have additional proceeds not used in purchasing a new home for her use.

Because Mr. Zeitchik has met his burden of proving his inability to pay the $145,000.00 obligation and the mortgage payment obligation and of proving that the benefit of the discharge to him outweighs the detriment to Ms. Zeitchik, the mortgage payment debt of $1,884.82 per month, with an outstanding balance as of January 7, 2007 in the amount of $42,235.68 plus $1,884.82 per month, and the $804.15 per month payment with a balance of $99,888.64 as of March 19, 2007, arising out of the agreement incorporated into the judgment of absolute divorce entered on August 7, 2000, is **DISCHARGEABLE**.

A separate judgment will be entered.

**SO ORDERED.**

**END OF DOCUMENT**